IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANDY MANGUAL GARCÍA,

    Petitioner,

        v.

THE UNITED STATES OF AMERICA,

    Respondent.

CIVIL NO.: 08-2241 (CCC)
Related to: 04-0079 (CCC)

**AMENDED REPORT AND RECOMMENDATION**

**I. PROCEDURAL POSTURE**[1]

On February 23, 2004, petitioner Andy Williams Mangual García ("petitioner" or "Mangual") and three other individuals were indicted for violations to the controlled substances laws of the United States of America.  ECF No. 2 in 04-0079 (CCC).  In March and April, 2005, a jury trial was held.  ECF Nos. 143, 144, 150, 152, 160, 161, 167, 171, 178, 183, 185, 188, 191, 192, 201, 213, 216, 224,  246, 254, 256 in 04-0079 (CCC).  After more than twenty days of trial had elapsed, a motion for new trial was denied, and a motion for declaration of mistrial was denied, the jury rendered a verdict finding Mangual guilty of both counts as charged in the indictment.  ECF Nos. 231, 236, 250, 259 in 04-0079 (CCC).  On August 2, 2005, Mangual was sentenced three hundred sixty-four (364) months of imprisonment as to each count, to be served concurrently with each other, plus five years of supervised release as to count one and four years of supervised release as to count

---

[1]The report filed on December 31, 2013 (ECF No. 96) contained references to the hearing held on May 25, 2010, taking into account that at the subsequent hearings held on September 7 and 25, 2012, both parties – without objection – made references to the evidence presented at the hearing held on May 25, 2010. E.g., ECF No. 87, at 16, lines 12-25; ECF No. 90, at 9, lines 1-5. Pursuant to the court's directives to treat the hearing held on May 25, 2010 as a nullity (ECF No. 101), this amended report has removed from the factual findings and legal analysis all substantive references to the evidence presented during said hearing.

two, to be served concurrently with each other.  ECF Nos. 308 and 315 in case 04-0079 (CCC).[2]

Three days after the entry of judgment, Mangual filed a notice of appeal.  ECF No. 311 in case 04-0079 (CCC).  Mangual's conviction and sentence, however, were affirmed by the Court of Appeals for the First Circuit on September 18, 2007.  ECF No. 362 in case 04-0079 (CCC).  On October 28, 2008 and April 17, 2009, Mangual filed motions to vacate, set aside, or correct the sentence imposed upon him, both of which were consolidated upon case number 08-2241, raising multiple reasons why his trial attorney, Jorge Armenteros Chervoni, had been ineffective.[3]  ECF Nos. 1 and 2 in 08-2241 (CCC), and 364 and 366 in case 04-0079 (CCC).  The court, however, denied on January 20, 2010, all of the arguments raised by Mangual, except that it referred to a U.S. Magistrate Judge for an evidentiary hearing and a report and recommendation the allegations surrounding petitioner's alleged plea offer and his lack of knowledge.  ECF No. 11.[4]

After holding an evidentiary hearing on May 25, 2010, then Chief U.S. Magistrate Judge Justo Arenas issued on June 4, 2010 a report, concluding that petitioner's trial counsel had communicated the plea offers received from the prosecution and that "[i]t is clear that petitioner was adequately represented by attorney Armenteros and that his allegations, while initially plausible, result meritless."  ECF No. 21 at 11.  On November 30, 2010, the court approved and adopted the report and recommendation, and thus, denied petitioner's motion to vacate and entered judgment

---

[2]A two-hundred dollar monetary assessment was also imposed as part of the sentence.  Id.

[3]The second motion under 28 U.S.C. §2255 has also been referred to as a "supporting brief".  ECF No. 11. For clarity's sake, these two motions will be referred to hereinafter as a single motion.

[4]The opinion and order was filed on January 21, 2010.

accordingly.  ECF Nos. 26 and 27.[5]

On July 28, 2011, petitioner lodged a notice of appeal to the order of the court adopting the report and recommendation and the judgment entered.  ECF No. 40.[6]  On March 1, 2012, the Court of Appeals for the First Circuit entered judgment, stating in its pertinent part as follows:

> In light of Bucci v. United States, 662 F.3d 18, 34 (1st Cir. 2011), we accept the government's concession of error.  Accordingly, we vacate that part of the district court's judgment denying the claims that were subject of the evidentiary hearing conducted on May 25, 2010, viz., that counsel was ineffective in failing to advise the petitioner of the details of a plea offer and in failing to explain to the petitioner the difference between pleading guilty and going to trial...  As petitioner did not seek review of the denial of his remaining habeas claims, they are waived and the scope of the remand is limited to consideration of the two claims at issue.

ECF No. 57.

Two evidentiary hearings have since been held, one in which petitioner, who has been represented by counsel Joseph Laws since July 10, 2012, had the opportunity to testify and one in which his trial attorney, counsel Jorge Armenteros Chervoni, testified.  ECF Nos. 74, 77, 83, 87, 90, 92-1, 92-1.  The scope of the evidentiary issues was limited to the two claims specifically alluded to by the Court of Appeals for the First Circuit.

## II. EVIDENCE ADDUCED DURING THE HEARINGS AND LEGAL ANALYSIS

A defendant facing a criminal charges is entitled to have effective assistance of counsel. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."

---

[5] On September 30, 2010, that is after the filing of the report and recommendation, but before the court had adopted and approved the same, petitioner filed a notice of interlocutory appeal which was eventually dismissed. ECF Nos. 23, 28, 29.

[6] Another notice of appeal was filed on September 22, 2011, but the same was voluntarily dismissed.  ECF Nos. 46, 54, 55.

Strickland v. Washington, 466 U.S. 668, 687-688 (1984).  Furthermore, such a defendant must also show that this deficient performance prejudiced him in his defense.  Id. Prejudice in this context requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The two-pronged Strickland standard applies to ineffective-assistance claims arising out of the plea negotiations.  Hill v. Lockhart, 474 U.S. 52, 57 (1985).  "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process.  During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citations omitted).

A. Whether trial counsel failed to advise the petitioner of a plea offer.

At the hearing held on September 7, 2012, petitioner testified that counsel Armenteros never advised him that there were plea bargaining offers made to him while the case was pending nor showed him any document where a plea offer was written. ECF No. 90, at 7, 8, 12, 13, 22. Petitioner also testified that while he was at the Metropolitan Detention Center ("MDC") he never received through the mail any document detailing a plea offer. ECF No. 90, at 9. According to petitioner, he came to know of the existence of a plea offer recommending a sentence of imprisonment between fourteen and seventeen years after he had begun to serve his sentence at Coleman. As to a plea offer for a term of ten years of imprisonment, petitioner testified that he learned about that for the first time in 2010. ECF No. 90, at 8, 9.

During cross-examination at the hearing held on September 7, 2012, petitioner was further inquired as to this particular issue:

PROSECUTOR         :         So, you knew that a plea offer was made?

4

| PETITIONER | : | Not an offer.  The only thing he would always tell me was that I was facing many years, that it was a lot of years.  The only time that I learned about any offer was when I was already in prison.... |
| PROSECUTOR | : | So, when you said "Counsel said to me that it was many years", you were referring to the sentence that you faced and not any specific plea offer? |
| PETITIONER | : | Yes, I'm guessing that's what it was because he never explained to me what it was. |

ECF No. 90 at 13.

Counsel Armenteros, however, testified that he did communicate to petitioner a plea offer that would entail a sentence recommendation of fourteen years of imprisonment, and that he did show to petitioner AUSA Lynn Doble's plea offer letter. ECF No. 87, at 4.[7] Therefore, with respect to the fourteen-year plea offer, the testimony of Mangual and counsel Armenteros are at odds with each other, at least in part. As to the alleged failure of trial counsel to communicate that the government was willing to recommend a fourteen-year term of imprisonment in consideration for a guilty plea, the testimony of Mangual is not credible. His assertion that he was told about "many years" but that he did not know that it was a plea offer stretches credulity, particularly as petitioner had had a prior encounter with the legal system before the conclusion of case 04-0079 (CCC). On the other hand, there is no reason to doubt counsel Armenteros's testimony that he communicated to petitioner the government's willingness to recommend a fourteen-year term of imprisonment, though as discussed below, this conclusion does not necessarily mean that he explained all the pertinent details related to said offer.

Counsel Armenteros, however, was not clear as to whether a ten-year offer was ever

---

[7]AUSA Julie Mosley substituted for AUSA Lynn Doble subsequently in the case.  ECF No. 87 at 5, 9.

discussed with Mangual. In counsel Armenteros' own words, "[t]he ten years, it was an issue of back and forth, and the defendant, at some point, had told me that he was fixed on going to trial." ECF No. 87, at 4.[8] Yet, counsel Armenteros later clarified: "Well, the prosecutor mentioned that the lowest she would go would be ten years, and that, if I was ... my client was willing to take it, then the confines of the plea agreement could be put in writing." ECF No. 87 at 5. More significantly, at the hearing held on September 25, 2012, the following exchanged transpired:

> PROSECUTOR : Okay, so, when the prosecutor told you the lowest that she could go was ten years, what did you do?
>
> ARMENTEROS : Well, this is where I have my doubts. I'm not exactly sure if I did, indeed, communicate that offer to Andy. Andy was fixated with going to trial.

ECF No. 87 at 6.

At another point during the hearing, counsel Armenteros acknowledged that the ten-year offer was never discussed "fully". ECF No. 87 at 17. Furthermore, counsel Armenteros added at the hearing held on September 25, 2012 as to the ten-year offer that "[w]e never discussed what would be the minimum under five 'kilos', and I certainly did not discuss that offer, as perhaps I should have, as I did with the fourteen year offer." ECF No. 87 at 18.

In view of the matters discussed above, it is evident, that counsel Armenteros' testimony as to whether he ever communicated a ten-year offer to Mangual is not reliable and that more weight should be given then to petitioner's contention that he was never made aware of an option in which the government would be willing to recommend ten years of imprisonment pursuant to a plea agreement. At best, a ten-year offer was not fully discussed between petitioner and his trial counsel.

---

[8]Counsel Armenteros also added: "The ten year again, it was informally. It was never put in writing. I might have mentioned it to Andy, but I'm not sure that I discussed it with him the way I discussed other offers... or the other offer that was made." ECF No. 87 at 7.

The conversation between AUSA Doble and counsel Armenteros about a potential ten-year recommendation, however, cannot be described as a formal offer.  It was never in writing.  No specific guideline calculations were discussed.  No expiration date was set. "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012).  The informal conversation between AUSA Doble and counsel Armenteros cannot be described as a formal offer.  Therefore, although prudence should have prompted counsel Armenteros to request from AUSA Doble a ten-year, formal offer in writing, the fact is that a formal, ten-year offer never materialized. An ineffective assistance of counsel claim cannot prosper on failure to communicate a speculative "might go down" offer.[9]

Nevertheless, despite the conclusions detailed above, a review of the evidence regarding counsel Armenteros's performance during the plea bargaining process shows that his conduct fell, at least in some respects, below an objective standard of reasonableness. Regardless of whether the plea offer communicated was for a sentence recommendation of fourteen years of imprisonment or ten, it is clear that counsel Armenteros did not thoroughly discuss the United States Sentencing Guidelines with petitioner and how they would apply to him in his particular case. Petitioner testified that counsel Armenteros never explained to him the United States Sentencing Guidelines, how said guidelines applied to his case, what the guideline calculations could be if he was convicted at trial,

---

[9]The Frye Court warned about the perils of opening the doors of informality in the plea bargaining process: "The prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences.  First, the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations.  Second, States may elect to follow rules that all offers must be in writing, again to ensure against later misunderstandings or fabricated charges...  Third, formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence." Id. at 1409.

and the benefits of a reduction in points for acceptance of responsibility if he pled guilty, ECF No. 90, at 9, 10.  Counsel Armenteros's testimony did not contradict petitioner's testimony as to these matters.[10]

| | | |
|---|---|---|
| COURT | : | Mr. Armenteros, did you ever discuss the United States Sentencing Guidelines with the petitioner, Andy Williams Mangual-García? |
| ARMENTEROS | : | I mentioned the Sentencing Guidelines.  But, did I discuss them as pertaining to the case?  The answer is no...  Did we go into how we would fit into the Sentencing Guidelines in his sentence?  The answer is no. |

ECF No. 87, at 18, 19.[11]

| | | |
|---|---|---|
| COUNSEL LAWS | : | Right.  And ... it was extremely difficult to get a guideline on this case because of the fact that you didn't know what the testimony of the informant was going to be? |
| ARMENTEROS | : | That is correct.  And, the plea was never contextualized [sic] in the guidelines before.  Okay? Lynn just gave me "You get fourteen", and we never |

---

[10]Petitioner also testified that counsel Armenteros never informed him the "net time" that he would serve in jail under any plea offer made by the government, ECF No. 90 at 10; never discussed with him the details of a "halfway house" transition period six months before being released from jail, ECF No. 90 at 11; and never told him that if he had been a drug addict he could be eligible to receive up to one year of credit regarding his term of imprisonment by taking a course related to controlled substances.  ECF No. 90 at 11.  It is noted that in Padilla v. Kentucky, 559 U.S. 356, 365 (2010), the Supreme Court of the United States made the following assertion: "We ... have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under Strickland, 466 U.S., at 689.  Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation."  See also Gallardo v. Grounds, 2012 WL 5069959, at *4 (C.D. Cal. July 30, 2012) (unpublished) (report and recommendation adopted, Gallardo v. Grounds, 2012 WL 5069360 (C.D. Cal. Oct. 16, 2012) (unpublished) ("[W]ith respect to the claim that counsel performed deficiently by misstating or failing to advise petitioner regarding the effect of his plea on prison credits, the Supreme Court has specifically reserved the question of whether an attorney's failure correctly to advise a defendant regarding 'collateral' consequences of a guilty plea can ordinarily be the basis for a claim of ineffective assistance of counsel.").

[11]Counsel Armenteros did discuss, but briefly, the matter of supervised release with petitioner.  ECF No. 87, at 20.

really talked about the guidelines at all.  Okay?

ECF No. 87, at 14-15 (in its pertinent part).

Simply mentioning the existence of United States Sentencing Guidelines to a client is not enough; an attorney has the duty to explain to a client, to the extent reasonably possible, potential scenarios of applicable calculations within the particular context of the circumstances of the case and the defendant's criminal history.  A discussion of the United States Sentencing Guidelines may help a defendant to understand why the prosecutor is making a particular sentencing recommendation, or to make a counteroffer based on different or adjusted guideline calculations.  In the case at bar, Mangual unequivocally testified that trial counsel had not discussed the United States Sentencing Guidelines with him and counsel Armenteros' testimony does not lead to a different conclusion.[12]

B.    Whether trial counsel failed to advise the petitioner of the difference between pleading guilty and going to trial.

The issue of whether petitioner understood the consequences of exercising his right to a trial rather than entering a guilty plea was also explored at the hearing held on September 25, 2012:

| PROSECUTOR | : | Did you explain, to Mr. Mangual García, the consequences of going to trial versus pleading guilty? |
|---|---|---|
| ARMENTEROS | : | That's a good question because I believe I did, as I understood it at the time...  If I could have explained it, I would have explained it differently now.  What do I mean by that, right?  Well, certainly going to trial probably would have meant a higher sentence....  It's one of those things where I don't really know what the correct answer is, as I review my memory and my notes ... |
| PROSECUTOR | : | Did you tell Mr. Mangual-García that, if he went to a trial, he could face a higher sentence than the plea |

_____

[12]In counsel Armenteros's words, "the plea was never contextualized (sic) in the guidelines...."  ECF No. 87 at 15.

offer?

ARMENTEROS : In fact, I told him, although we were not
contemplating that.... I don't know if I mentioned
that he could get life precisely, but I did mention that,
obviously, the result of trial would probably be worse
than getting a plea agreement. You want a plea
agreement so your sentence won't be as high. Did I
explain the intricacies? I had not, but certainly I did
tell him that about going to trial and being found
guilty. That's the most important part.

ECF No. 87, at 10-12 (in its pertinent part).

Counsel Armenteros acknowledged that he never mentioned to Mangual the statutory
minimum terms of imprisonment contingent upon the quantities of controlled substances involved
in the offense. ECF No. 87 at 18. He is also not sure of whether he warned the petitioner of the
maximum term of imprisonment that he was facing as to both counts of the indictment if convicted,
that is life. Moreover, as previously stated, counsel Armenteros did not explain the United States
Sentencing Guidelines to his client either in the context of a plea offer or trial, if convicted. ECF
No. 87 at 18, 19. Under these circumstances, it appears that counsel Armenteros' legal
representation of Mangual fell below an objective standard of reasonableness.

C. Whether petitioner suffered prejudice as a result of trial counsel's conduct

"It is not enough for defendant to show that the errors had some conceivable effect on the
outcome of the proceeding. Virtually every act or omission of counsel would meet that test."
Strickland v. Washington, 466 U.S. 668, 693 (1984). Therefore, in analyzing the second prong of
the Strickland test, the court must turn away from the merely conceivable to actual prejudice.
Turning, thus, to the question of whether Mangual has suffered prejudice as a result of counsel
Armenteros' sub-par performance during plea negotiations and the advice given to contrast the plea

versus trial alternatives, Mangual urges the court to find that had he been aware of the potential

credits and reductions in sentence related to a potential ten-year sentence recommendation, he would

have accepted a plea agreement under those terms:

> COUNSEL LAWS : And, if he [petitioner] would have been told and accepted a plea of ten years, that may have meant about really eight years in prison. Is that correct?
>
> ARMENTEROS : That is correct. And, that, I have to admit, at the time, I was not as versed perhaps in the Federal qualifications. Obviously, as time has gone on, I follow that path, and I realized that it's very important for you to be able to discern not only what the sentence in years is going to be, but also what is the actual time that a client is going to make. ...
>
> I did not have the knowledge at that time, although I had scarce knowledge, but really not as much as I have now about modifications in the U.S. BOP, in the United States Bureau of Prisons.

ECF No. 87, at 13-14 (in its pertinent part). As previously discussed, however, this was not a formal

offer, but rather a might-go-down-to-ten informal offer. Therefore, petitioner cannot claim to have

suffered prejudice for not having listened to an offer that was never formally made to him.

Furthermore, although Mangual also testified that before going to trial he did not know what

the concept of pleading guilty was and that he did not know that he could plead guilty to receive a

lower sentence, this portion of petitioner's testimony is not credible. ECF No. 90 at 14. Petitioner

is not a first-time offender who is unfamiliar with the criminal justice system; he admitted that he

had pled guilty to a weapons law violation in another case that he had in a court of the

Commonwealth of Puerto Rico. ECF No. 90 at 14-16. Even though there may be some differences

between the state and federal plea bargaining processes, there is no reason to believe that petitioner

was ignorant about the concept of pleading guilty in consideration for a lower-sentence

recommendation.

Treating the hearing held on May 25, 2010 as a nullity, however, we cannot conclude that petitioner had irrevocably made up his mind to go to trial irrespective of any plea offers tendered by the government. Although counsel Armenteros first testified that petitioner was "fixed on going to trial" (ECF No. 87, at 4, 6), he later conveyed a different impression:

| PROSECUTOR | : | And, you said, at some point, Mr. Mangual García told you that he wanted to go to trial? |
| ARMENTEROS | : | That is correct, that is correct. |
| PROSECUTOR | : | Was that ... did he want to go to trial regardless of any potential plea offer... |
| ARMENTEROS | : | Well, he... |
| PROSECUTOR | : | ... or was he still willing to potentially take a plea at that time? |
| ARMENTEROS | : | Well, actually, to be very honest, he was talking about a plea offer, so I guess he would have taken some time.... |

ECF No. 87, at 7, 8.

Hence, we turn our attention to whether petitioner has been prejudiced by the lack of proper legal advice as to the difference between pleading guilty and facing trial. On September 25, 2012, counsel Armenteros indicated that he did warn the defendant that if convicted at trial he would face a tougher sentence than if he pled guilty. However, he acknowledged that he did not discuss the "intricacies" with Mangual, intricacies that included the United States Sentencing Guidelines and statutory minimums if convicted. He was also uncertain as to whether he ever warned Mangual that if convicted at trial, he could be exposed to a sentence of life imprisonment. Counsel Armenteros' candid admission of his failure to thoroughly discuss with his client the ramifications of the

alternative of pleading guilty versus going to trial presents serious concerns. United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) (stating that "knowledge of the comparative sentence exposure between standing trail and accepting a plea offer will often be crucial to the decision whether to plead guilty"); United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (per curiam) (internal quotation omitted) (same); Vinson v. Brown, 2011 WL 7640001, at *11 (July 11, 2011) (unpublished report and recommendation adopted by Vinson v. Brown, 2012 WL 1129271 (March 29, 2012)) ("An attorney's failure to communicate and advise a client adequately regarding the existence or the terms of a plea offer, or the maximum sentence faced if convicted after trial, may constitute ineffective assistance."); Wooten v. Raney, 112 Fed.Appx. 492, 496 (6th Cir. 2004) ("in some cases the failure to inform a defendant correctly of his sentencing exposure at trial may constitute ineffective assistance of counsel...."); Catalán-Román v. United States, 2013 WL 6229385, at *7 (D.P.R. 2013) ("knowledge of sentencing exposures is crucial to the decision of whether to plead guilty.")

In the guilty plea context, "'the prejudice question is whether, absent the ineffective assistance,' there is a reasonable probability that the defendant would have accepted the plea bargain offer." Boyd v. Waymart, 579 F.3d 330, 354 (3rd Cir. 2009) (quoting 5 Wayne R. LaFave et al., Criminal Procedure §21.3(b), at 116, 125-26 (2d ed. 1999). In order to answer this inquiry, it is useful to compare petitioner's own assertions regarding the government's formal fourteen-year offer and informal ten-year offer as to how he would have acted before trial had he known what he knows at the present:

| | | |
|---|---|---|
| COUNSEL LAWS | : | And, it is a fact that the sentence of ten years would make you serve around eight years. Is that correct? |
| PETITIONER | : | Yes, now I know it would have been like eight years |

> and four months, and that's what I told him. That, if he had given me the guidance about that, I would have accepted the ten year offer. I never said that I was innocent. What I told him was that, if I was brought an offer of five to eight years, I would take it.

ECF No. 90, at 11.[13] Based on what is stated above, it is clear that there is a reasonable probability that had the government made a formal plea offer of ten years to petitioner and absent trial counsel's ineffective assistance, petitioner would have accepted it. Yet, as previously mentioned, the government never made a formal plea offer of ten years. On the other hand, much in contrast to his reaction to the ten-year scenario, is petitioner's hesitation and equivocal answer to the question of whether he would have taken the fourteen-year plea offer:

> PROSECUTOR : Mr. Mangual, if the good time credits and credits for treatment programs were unable to bring the fourteen years down to eight years, if it would be higher than eight years, you would have rejected it, right?
>
> PETITIONER : At that point in time, I don't know. I can't tell you one way or the other. Right now, I could say maybe I would have because I've already been in for nine years, but, back then, I don't know. But, maybe, if he had told me that, if I had gone to trial, I would have gotten many more years, then maybe I would have.

ECF No. 90, at 18, 19.

Twice does petitioner acknowledge that he does not know whether he would have rejected or accepted the government's fourteen-year plea offer if counsel Armenteros had properly advised him about applicable credits to his term of imprisonment. Furthermore, no evidence has been presented to suggest that the fourteen-year plea offer, even with credits taken into account, would have come anywhere near to an actual term of imprisonment of eight years. Moreover, had counsel

---

[13] This is consistent with the range of five to eight years that counsel Armenteros' testified about regarding his client's expectations. ECF No. 87, at 7, 13.

Armenteros warned petitioner that by going to trial he would have been exposed to many more years in jail if convicted, the most that petitioner can assert is that "maybe" he would have accepted the fourteen-year plea offer. The question, then, is whether a petitioner who asserts more than once that he does not know whether absent trial counsel's unprofessional errors he would have accepted a government's formal plea offer for fourteen years constitutes a reasonable probability that petitioner would have accepted the plea bargain offer. I conclude in the negative. Although "[i]t is a relatively low standard, given that it is not necessary to even prove it is 'more likely than not' that the outcome would be different" Boyd, 579 at 354, petitioner's "maybe" is an invitation to speculate.

Therefore, although petitioner clearly received ineffective assistance of counsel, he has not shown that he has suffered prejudice as a result of his trial counsel's performance. For the foregoing reasons, it is hereby RECOMMENDED that petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 be DENIED.

IT IS SO RECOMMENDED.

The parties have fourteen (14) business days to file any objections to this report and recommendation.  Failure to file same within the specified time waives the right to appeal this report and recommendation. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B), and Local Rule 72(d); see also 28 U.S.C. § 636(b)(1); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 18th day of August, 2014.

s/Marcos E. López
United States Magistrate Judge